Morning, Your Honor. Sean Oates with the Office of the State Appellate Defender on behalf of Hector Cortez. May it please the Court? Hector Cortez was convicted of murder after a jury trial in which two crucial pieces of testimonial hearsay were admitted against him without being subject to cross-examination. The first piece of evidence was a testimonial statement given by a third party, Antonio Martinez, who had confessed to the crime on tape to a government informant as he handed the murder weapon to that informant. And Martinez's statement became the crux of the defense case once the trial court correctly ruled that under Chambers v. Mississippi, the statement could come in as a third party declaration, confession against penal interest. The state argues that that ruling was improper, but clearly where the statement was against self-interest, made to a close acquaintance, and corroborated by the declaration's possession of the murder weapon, it was not even close call under Chambers to allow this statement in. And the trial court did that correctly in allowing the defense to present this statement and base its defense around that statement. Unfortunately, the trial court also began to indicate that it was considering allowing in Martinez's recantation of his confession, which was made to an assistant state's attorney later, prior to his being convicted of his plea. The counsel stipulated that, didn't it? Right. And counsel stipulation constitutes a waiver of the defendant's confrontation rights under the Sixth Amendment. And under the Illinois Supreme Court case of People v. Campbell, that stipulation, that waiver, has to not only be not objected to by the defendant, but be a part of sound trial strategy. And in this case, there was no sound strategy for the defense essentially negating the key piece of evidence to its case, which was Martinez's confession. You're not alleging ineffective assistance of counsel, right? Well, the way Campbell sets this case up, it's just you look at the strategy involved. It doesn't determine whether there's a Strickland violation. It doesn't analyze the issue under Strickland. It simply asks, was there a sound strategy in the decision to stipulate? Now, here there are several reasons why this was not a sound strategic decision. Let me build on Justice Karnez's question. If the strategy that's employed doesn't yield the hoped-for results, does that mean it was bad strategy, or is that just hindsight? That would be hindsight. But in this case, there was no sound strategy, because the results – the reason counsel decided to enter into this stipulation was because the trial terms are defined. As the parties went over in their briefs extensively, there was a lot of argument about whether the word smoked – when Martinez claimed he smoked the victim, did that mean he actually shot and killed him? And the state says, well, we have Martinez's recantation, and in that recantation, he does say, I told the informant that I killed this victim. So that was originally what defense counsel thought was going to – why this recantation was going to come in. And eventually the state, out of nowhere, says they have to introduce this entire recantation, including the part where Martinez says, I didn't actually kill him, I was just bragging. And defense counsel is taken off guard, the trial court is taken off guard. Eventually the trial court indicated that it would not allow – it seemed to indicate, at least to defense counsel, that it would not allow this confession anymore. The trial court never ruled, did they? Well, there wasn't a precise ruling. I'm sorry, excuse me? There wasn't a precise ruling, no. Yeah. And the reason the trial judge says, oh, I don't know, why should I miss it? I mean, you people have stipulated. You people have agreed. Well, from the conversation, it seems like defense counsel was under the impression that he had to make the decision to introduce this recantation, or else the confession itself would not come in. Let me bring you back. But you have not alleged on appeal that you are asserting or that this defendant is arguing ineffective assistance of counsel. So what you're saying is that the trial lawyer made some strategic errors, and as a result of those strategic errors or bad strategy, this is what happened. Well, you know, that happens during a case from time to time. You have a strategy. It doesn't yield the results that you want. But is that reversible error? In the context of the waiver of the right to confrontation, yes. The Illinois Supreme Court said you have to look at the strategy involved when there's a waiver of the confrontation rights. So you think that that was really a big deal in this case, so his counsel was ineffective for not doing that. Is that what you're saying? This was the most crucial piece of evidence. The defense said that the state offered two weak eyewitness identifications from two girls who were running away, turned around, and saw sparks coming from the area where both the defendant and this third-party declarant were standing. They had conflicting ‑‑ But you did not assert ineffective assistance of counsel on appeal. You basically agreed tacitly that it was trial strategy. Well, I raise this issue under People v. Campbell, which is once, you know, and Campbell doesn't refer to Strickland either. If you read the language in that case, all it seeks to determine is whether there's a sound trial strategy for the waiver of that right to confrontation. Let me ask you another question. Because you retrospectively don't agree with someone's strategy, does that mean it was unsound? No, and my point here is that I'm not trying to use hindsight. I'm not looking back. I'm saying at the time counsel made this decision, he was under either the misimpression that this had to come in or else his confession wasn't going to come in, or he was taken off guard. And the problem is there was no benefit for him to stipulate. The state hasn't pointed out any benefit for him to stipulate. Martinez wasn't going to testify. The state had already said Martinez wasn't going to testify. And it's clear that this was a testimonial statement. So if this is a testimonial statement and Martinez isn't going to testify, why stipulate to the fact that he recanted his confession when that confession is your best defense? So is it the admission or the repudiation that severely prejudiced Cortez? Well, it's that repudiation without being able to cross-examine him. And under Crawford, that's his testimonial statement. He needs to be subjected to cross-examination. It seems like the admission would be pretty bad, too. You're not complaining about that. I'm sorry, which admission? The admission that he was Martinez, by Martinez, that he was the one that actually killed the victim. Well, of course not. That was the defense, yes. Martinez had the murder weapon. He told the governor and foreman, I killed this man. And he told them why. He said, I had problems with him. And he was seen at the crime scene. And then for the state to bring in this testimonial repudiation without being able to probe that repudiation is exactly what happened in Chambers. In Chambers, there was a murder. There was a third party who confessed. He got on the stand and then he recanted. And in that case, it was because of a state rule against cross-examining your own witness, the defense was not allowed to probe that confession or that recantation. And that court found that was a violation of the rights of confrontation. And we know from Crawford now that this is an even stronger guarantee, that these types of statements made, these solemn declarations made to prove a fact against the defendant. And by the way, the state argues that this was just admitted for impeachment. This was not admitted for impeachment. There was no limiting instruction. This was admitted substantively to prove the fact, to prove the truth of the matter asserted, which was that Martinez did not actually kill the victim. He was just bragging about it. And I would note that because this is a constitutional violation, this has to be found harmless beyond a reasonable doubt, which distinguishes this from a claim of ineffective assistance of counsel. When there's a waiver of the rights of confrontation, you look at the trial strategy, and if there is no sound strategy, then you have, then the error was improper, or the admission of the evidence was improper, and it becomes a constitutional violation, which has to be proven harmless beyond a reasonable doubt. And where there's weak eyewitness identifications and then two competing confessions, one by a third party who happens to have the murder weapon. Weak witness identification. Well, both eyewitnesses didn't come forward. Well, they both identify your client. Sort of. They both ran away and turned around and said they saw sparks coming from the area. One had, but, again, the third party was also standing right there. But they also said they didn't see, that they were able to see the hands. There's no dispute that the eyewitnesses knew all of the parties that were crowded around the picnic table. The only party's hand that wasn't visible was your client, who had his hand wrapped in a T-shirt or something. The other two people, their hands were visible, and the witnesses said there were no guns in their hands. So I think the jury drew an inference that if there was a shot fired, it probably came from the guy that had the T-shirt wrapped around his hand. Well, that points out one of the crucial discrepancies, which was that only one of the witnesses said there's a T-shirt wrapped around the. But isn't one witness enough, if the jury believes them? If it's uncontradicted. But in this case, we have another witness who said there was no T-shirt. The one witness who saw the T-shirt said the defendant was standing on top of the picnic table. The other witness didn't say that. Both were running away. Both were turning around while this was going on. And not only do they conflict with each other, but you have this third party confession by the person who has the murder weapon. Isn't that what the jury is responsible for doing, listening to these conflicting bits of testimony from the witnesses who, admittedly, it all happened quickly. And the jury has the obligation to resolve that. Isn't that what they did here? Of course. But they did it against your client, so you don't like that. I understand. Well, no, they did it while considering that inadmissible piece of evidence, which was crucial to destroying the defense. You can't ignore that that piece of evidence was part of the jury's consideration of all this evidence. Is this a situation where the trial strategy backfired because the court kind of changed course and wouldn't let your client have his cake and eat it? Isn't that what this is? That's what it sounds like to me. Not at all, Your Honor. There was no eating of the cake when that admission was entered. That admission took away the cake, and there was no point for counsel to stipulate to that testimony. I'm still waiting for the state to explain why he would stipulate to this piece of evidence that negates the entire defense. There was no reason for it. They already said they weren't calling Martinez. You should ask your colleague, the defense lawyer. I mean, that's who you should ask, not the state. Somebody on your side stipulated to it, so there must have been a reason. It was trial strategy, the state says. And barring anything else, I don't understand. It has to be sound strategy, though, Your Honor. And if there's no sound strategy, then there can't be a valid waiver of the rights of confrontation. If you don't like the outcome, it doesn't mean the strategy wasn't sound. If anyone could find a valid reason for stipulating to this, then fine. But it has to be sound. It's not just that I don't like it. I just can't come up with a reason to find it sound. And you don't like it. Well, there's a reason I don't like it, because it served no purpose. Why would you negate your entire defense by allowing the state to introduce this statement without being able to cross-examine the recantation? This is exactly what happened in Chambers. And in Chambers, you know, the court found in very similar circumstances that this was a violation of the rights of confrontation. If the Court has no other questions on that first issue, I'd like to move quickly to the second issue, which is, again, a confrontation issue, this time under the recent authority of Melendez-Diaz, a United States Supreme Court case, finding that a forensic analysis is indeed testimonial hearsay. Tell me about it. Let's talk about the business record exception. Well, I think this Court has found previously in Leach that autopsy reports do fall under the business record exception to the hearsay rule. But I think since Melendez-Diaz came down, that can no longer stand. The Court there clearly indicated that autopsy reports are a type of forensic analysis, and the Court also held that forensic analysis is testimonial hearsay. So you want us to ignore the business record exception, the statute? I don't think autopsy reports fall in the exception in light of the language of Melendez-Diaz, which says that, you know, building on Crawford, and if you look at people v. Stoeckle in the Illinois Supreme Court case, which defines testimonial, autopsy reports fall squarely within the definition of testimonial. They're solemn statements made to prove a fact relevant to the prosecution, which are made if an objectively reasonable person would believe they would be used at trial. And clearly when a medical examiner receives a body and proceeds to do an autopsy with, you know, five or six bullet wounds in it, it's clearly going to be an objectively reasonable medical examiner. It's going to know his report is going to be used at trial. Counsel, was there an issue in this case as to the cause or the manner of the victim's death? Not the specific cause of death. Obviously the defense was predicated on the fact that Martinez shot and killed the victim, so there was no dispute there. Everybody agreed that the victim died by multiple gunshot wounds, right? Well, yeah, and multiple gunshot wounds has different meaning in this case because the parties still dispute whether that report indicates that there were five gunshot wounds or six. Does it really matter? It does where the defendant's confession specifically said five. If there was actually six, which my reading of the autopsy report indicates, and I spelled out what six wounds I believe those are in the brief, then that would indicate that maybe it was the defendant's confession that was braggadocio. Counsel for Mr. Cortez also failed to, he didn't object to the introduction of any of the photographs or anything, did he? Not the photographs, and I'm not contesting those on appeal, but I also point out that those photographs don't explain much of anything other than the fact that there were some bullet wounds in his body. Was there a pattern of ineffectiveness? No, I don't see a problem with the pictures coming in because, again, there's no dispute that this victim died of gunshot wounds. My dispute is with, and counsel did act correctly here in objecting to the autopsy report. He said, I can't cross-examine the author of this report, and that was a precise grounds upon which this objection should have been, the inability to cross-examine, which is a Sixth Amendment violation. And so counsel, and he preserved that in his post-trial motion. So he did preserve this issue fully for review, and he was correct. He couldn't cross-examine this author. He made the point that this is a very technical document, that a lot of things went unexplained in it. And while the cause of death was not disputed, a variety of other things in the report were relevant to the defense, and that includes the lack of close-range firing. There was no stippling indicated on the report. The number of gunshot wounds, as I've mentioned. The trajectory of the bullets. The report seems to indicate that one of the wounds was an upward trajectory. And as I noted before, one of the witnesses indicated that the shooter was standing on the picnic table bench, while another did not. So there were a lot of items in the report that cross-examination could have probed, could have violated for the jury, and the state can't prove that that, again, was harmless beyond a reasonable doubt to not allow that in. So if this Court has no other questions, I just ask that it reverse Cortez's conviction and remand for a new trial, at which you'll be able to exercise this right to confront all the witnesses against him. Thank you, Mr. O'Toole. Good morning, Your Honors. My name is Susan Cheryl Sullivan. I'm a Cook County Assistant State's Attorney, here on behalf of the people of the State of Illinois in this matter. The defendant raises two claims in this case. He raises the introduction of the portion of the handwritten that Antonio Martinez made to the State's Attorney, which he calls a repudiation, and also a Confrontation Clause claim relating to the introduction of the autopsy report. Ms. Sullivan, can I ask a big favor? Yes. Could you keep your voice up a little bit? There's not a microphone. It's not? No. Okay. At least I was told it's not a microphone. Oh, no. Maybe it is. You never know. All right. I will talk as loud as I can. Thank you. Okay. Much better. So where's the microphone? I thought it was a microphone. It seems like a microphone. Everybody rephrased it. It's a microphone, but it does not elevate your keys. It's the microphone that records the proceedings for the CDM, but not to protect it. Okay. I missed that. Okay. I will keep my voice up. Thank you very much. Go ahead. I'd like to address first the claim relating to the introduction of Antonio Martinez's handwritten, the portion of the handwritten statement. Several points, and I want to sort of clear this up before we get into the meat of this, if it's okay with the Court. Several points are not in dispute in this case. Number one, the trial court granted defendants motion in limine, where he sought to introduce the third-party admission by Antonio Martinez to the informant. This ruling, in spite of what defendant says in his brief and what he said up here in argument, was never changed by the trial court. Never. That's the ruling that's before this court. Trial court did indicate it was potentially reconsidering, never changed the ruling, and never changed the ruling because this handwritten statement came in by way, as Your Honor pointed out, of stipulation, an agreement between the parties. So that's not really in dispute. To the extent that this contingent ruling issue finds its way in the case and defendant sort of picks and chooses out of context and the stuff in the record, that never happened. Okay. Also, it's undisputed that Antonio Martinez made a second contradictory statement in the handwritten to this third-party admission that defendant wanted introduced to the informant. He made a second contradictory statement to the assistant state attorney saying, no, I didn't. It wasn't the shooter. I just claimed that because I wanted to be big and feared and impress this higher-ranking gay member. Okay. Ms. Shulman, the state's explanation of why it needed to introduce Martinez's handwritten repudiation was that it needed to explain why he made it. I mean, that's what the prosecutor offered as his reason for wanting to introduce the repudiation as well. Isn't that precisely the type of thing that should be tested on cross-examination? No. It's impeachment. Why not? This statement, this statement that Antonio Martinez made in the handwritten to the state's attorney, never, ever finds its way in our case but for its relationship to the third-party admission that defendant wants to introduce. It's irrelevant to us otherwise. Why would we introduce something that another guy says to a state's attorney saying, I'm not the shooter? It's not part of our case. It only takes value for us. And the only reason we want it in is to impeach, to show, hey, he said two different things at two different times here, to impeach the substantive hearsay that defendant wants in. But my question is more narrow than that. Isn't that precisely the type of statement that would, in the normal course of a trial, be subject to cross-examination? If you're referring to a constitutional right to cross, no. Under Crawford, it's very clear. If it's introduced for non-hearsay purposes, which is the definition of impeachment, and clearly what only value this particular statement has in this case with respect to ours. Well, the state's attorney said they wanted to introduce it to, quote, explain why he said it. That is one of the reasons that they offered. That was during the course of sort of an evolving argument between the parties before the trial court with respect to the admission of, as happens in a lot of cases with respect to the admission of a lot of evidence in a pretrial context. That's one of the reasons. Even if that's what the state's attorney said, which he did say, he also says various times, hey, he says to the informant, I'm the shooter. Well, he says to the state's attorney, I'm not the shooter. I just said it because I wanted to be impressive. So ultimately, for this court, the decision is whether or not that is a legitimate piece of evidence that was properly introduced in this trial. The answer is yes. It was introduced as impeachment. And you don't think that there's any room for cross-examination in that scenario that you just painted? There's no constitutional right for defendants to demand that we put them on the stand. Your opponent raised it on a couple of grounds. He's constitutional, but he also talked about this fundamental fairness. You don't think that there is any cross-examination right from a fundamental fairness, just basically making sure that the playing field is level for the defendant so that he has an opportunity to cross-examine the state's introduction of this because this clearly was a very damning piece of evidence to the defendant. Well, Your Honor, actually, the fairness, the level, the playing field issue in this case, that's the essence of a party agreement, the essence of a stipulation. The parties agree, hey, we're going to agree. You scratch my back, I'll scratch your back. This just comes in by way of – He said his back wasn't scratched. He was basically scratching the state's attorney's back, but he didn't give a scratching back in return because there was no rational trial strategic reason for the defense lawyer to have stipulated that. That's what his argument is. That brings me to actually what I consider has become kind of the big issue in this case. Defendant has made up a newly-minted constitutional right to ineffective assistance of stipulation. There's no such thing as a sound, a qualitative analysis for a trial strategy decision in the context of a stipulation that waives confrontation clause rights. He got it from some loose language in Campbell. That's why he's steadfastly hanging on to Campbell. But the Illinois Supreme Court cleaned it up in the next case in Phillips. It got rid of that sound language, that legitimate trial strategy language, from the test that he's talking about in Campbell. The bottom line is, if the parties agree to a stipulation that waives a defendant's confrontation clause rights,  it's not a personal waiver scenario in the handful of situations where a defendant has to personally waive. So long as the defendant doesn't object, so long as it isn't tantamount to a guilty plea, counsel can enter into this kind of a stipulation, which is exactly what happened in this case. It is quintessential trial strategy. There's no qualitative analysis built into the test. If there were, Your Honors, we'd have a brand new category of evidence. These stipulations that waive confrontation clause rights, that end run the prejudice prong of the ineffective assistance of counsel claim. Defendant has effectively suggested that, no, these just need to be as qualitatively assessed. Let's forget about the second prong. Your Honors was asking, did he raise an ineffective claim? Did he raise? No, he didn't. You know why? Because he can't make the showing. He's trying to end run the prejudice prong here. But I would suggest to you he's not raising it here because we're going to see that. If there's an affirmance in this case, that's next. That's right. I didn't say this court is going to say that. I'm saying he's raising that as a claim. That's not a legitimate claim. You don't anticipate what may or may not occur. But what could possibly, and I think Justice Cunningham asked this question of your opponent, what possible reason could there be for him to stipulate this? Because if he doesn't, defendant in his brief says, well, the sound trial strategy would have been to have him wait out the trial court, force him to a ruling on the reconsideration that he's intimating he's going to make. On his, what he says is most critical piece of evidence, wait it out. If it goes against him, then quick, get the stipulation. Preserve the claim for appeal, right? Why would we stipulate to introduce the impeachment if the third-party admission that he wants in isn't in the case? We would never, ever, ever stipulate to that. Bottom line is if he doesn't do this, he's in absolute danger of losing anything related to Antonio Martinez admitting to be the shooter in this case. And that's why it was a good, a very good decision on the part of trial counsel to enter into that stipulation. So you're saying that if he didn't stipulate, the admission wouldn't have come in. Well, there is a person in the courtroom called the judge who would make that decision. And you can't stand here and say you don't know that that absolutely would never have come in. That's, I beg to differ. There are other options and opportunities that may have been available to the defense in persuading that trial judge to let that statement in without the stipulation. Absolutely. To the extent that it's understood that I'm saying that's a foregone conclusion, that the trial court doesn't have its own mind and it's going to make its own decision, that's not what I'm saying. I'm saying what we know at the moment in stipulation is the trial court said, hey, I'm rethinking this. I just want you guys to know. He could ultimately say, hey, I'm sticking by my decision. He could also say, because it is a little shaky, there's only two of the four factors. The chambers factors that the trial court found in this case. Trial court also knows defendant wants to end run putting Antonio Martinez on the stand. He wants to insulate, not only does he want the hearsay in, he wants to insulate it from cross by us. So there's a very real chance that the trial court might change its mind. I'm not saying it would, but I'm saying it was good. And as your Honor said, lots of times in the heat of the moment, you've got to make those strategic calls. And it was a good one by the trial counsel in this case. Well, unless it's so good for him. Ultimately, at the end of the day, because his guy got convicted. But he really would have got convicted if there was nothing about Antonio Martinez being the shooter in this case. That's his most critical piece of evidence. He told you himself. I'd like to also briefly touch with respect to this issue on defendant's distortion. And that's really the only word I can come up with here. Of the factual and legal basis of the chambers holding. This isn't, as defense counsel said in argument, the exact scenario in chambers, actually. And his legal representations about the significance of chambers are also erroneous. Factually, what happened in chambers, just very briefly. Defendant himself put the witness on. So the third party admission came in through defendant's own witness, McDonnell. State then responds, well, McDonnell said he wasn't the shooter at a different time. That's the impeachment. That's our case, right? That's our impeachment. That's the repudiation, the recantation or whatever. That's not the problem that the chambers court found. The chambers court found that when it came back around for defendant's opportunity to present three other confessions that this McDonnell made to three other witnesses, systemic principles of evidence in the state of Mississippi at that time prevented him from. The combination of the voucher rule, because McDonnell was his own witness, he couldn't impeach him. Then he also couldn't substantively introduce these confessions, a statement against penal interest, through these other witnesses. Because the state of Mississippi at that time didn't recognize that as a viable hearsay. So either way he turned, the combined impact of systemic principles with the evidentiary principles in Mississippi didn't let him get this evidence in. Chambers absolutely never, ever, nowhere says that there's a constitutional right for defendant to insist that we put our impeachment on through a live witness only. That's just not the holding of chambers. What happened in this case were two evidentiary rulings, two proper evidentiary rulings, if you will. And they're not, even if they're considered error by this court, it's definitely not subject to the harmless gun or reasonable doubt standard, the evidentiary rulings. I want to quickly turn to the confrontation clause autopsy report claim. Defendant says 100% without a doubt this is Molinas Diaz. Full stop. That's not the rationale of Molinas Diaz. As I pointed out in my brief, the jurisprudence of the United States Supreme Court, when there's split rationales out there in a case, the most narrow grounds control the rationale. And that's Justice Thomas' concurrence. So defendant has never really established that this autopsy report fits within Justice Thomas' definition. It doesn't. It's not an affidavit. It's absolutely not an affidavit. It's neither of the other formalized testimonial kinds of evidence that Justice Thomas' rationale lists. Your opponent argues that the autopsy report has discrepancies, for lack of a better term, with respect to some of the evidence. And there was no opportunity to examine or delve into those discrepancies, such as the number of gunshots and the trajectory of the bullet and one or two other things that he mentioned. What do you say to that? That's actually, just to back up one second, what I was going to say prior to that is this court, the EH directive really asks this court, directs this court, if you will, to consider the harmlessness of any potential constitutional error first before it even gets to the constitutional thing. This court shouldn't get to, even though it's not testimonial, autopsy report isn't testimonial on the merits, shouldn't get to the constitutional claim on the merits because the introduction of this report was harmless, bannerism, without. And that's the context in which the defendant raises these kinds of arguments. He says, basically, you know, if the ME were on the scene, I could have probed a bunch of stuff. So it must be harmless, bannerism, without. Well, that's not the test. The test isn't that. The harmless, bannerism, without test says, did the admission, we're already assuming, we're presupposing that the report is erroneously in. So did the admission unconstitutionally impact the verdict? Was there, did it go to uncontested issues? Are you conceding that the report was erroneously admitted? No, absolutely not. No. I'm just saying by the EH flowchart, this is the way the analysis needs to go. It needs to go through the harmlessness first. And only if and only if we get beyond that, which we don't in this case, we get to the merits. Defendant says, okay, as your Honor pointed out, there's no dispute. Dead is dead. This witness dead. He died from multiple gunshot wounds. Everyone agrees, okay? Everyone agrees the only thing in the dispute is who's the shooter. Defendant says it's Antonio Martinez. Prosecution says it's defendant. Defendant says, well, if I had the MEI on the stand, I could have highlighted some, you know, no close range, no evidence of close range. Well, the fact is, he did say that. He made that argument in close, without the evidence, by the way. He made the argument in close. And effectively, to the extent that he could, he impeached. So in the testimony of the very eyewitnesses, he says, I should have had the MEI on the stand to use to impeach him of this. Well, if he had the MEI on the stand, the MEI would have said, listen, six inches, eight inches, maybe close range firing, not standing from a picnic table, not the way that these eyewitnesses, these are not close range shots. So actually not having the MEI on the stand, he could make the argument. With the MEI on the stand, he would have had a problem with that argument. The upward trajectory of the bullet. Are you saying that it was a good thing that he didn't get to cross-examine the MEI? I don't think he agrees with that. No, no. What I'm saying is, what he offers as evidence of that to point to the lack of harmlessness, this is one of the grounds. I'm saying not so much. Really, this ground wouldn't have gotten him anywhere. The next ground that he says is upward trajectory of the back wound. If I had the MEI on the stand, well, I could have explored the trajectory of the bullets, right? Maybe discounted some of the testimony of Veronica that he's on the picnic table shooting at the victim while he's on the ground. Again, not really. Victim's lying on the ground, he's on the picnic table, he shoots him. That's an upward trajectory. With the MEI on the stand, again, the MEI is going to say, wait a minute, how is somebody shooting down at someone laying on the ground? If he's far enough away, it goes that way, up his back. If his feet are facing the shooter, right? I don't know, we're not experts, but that's his point. That's his very point. That's why he wanted him on the stand, so he could explore those things. But we're exploring the harmlessness now. We're not saying, if he had him on the stand, it would be maybe a good thing to talk about this stuff. I'm saying, really, these things that he's raising are establishing that it's not harmless there. Your position is, correct me if I'm wrong, yeah, it was wrong, but it wasn't real wrong. It was harmless wrong. No, my position is, no, it wasn't wrong, but if it was, it wasn't real wrong. Okay, close enough. I also want to talk, Your Honors, about this five-shot, six-shot issue that defense counsel raises. Quickly. Okay, very quickly. Defendant says, had he had me on the stand, he could have explored the autopsy report and said, well, you know, maybe there were six shots, six bullets, the gun had six bullets, right? That would be the point of establishing the exploration of the number of wounds. Number one, that's not what the autopsy report says. And I urge this court to please very carefully read the autopsy report. It's very clear. There's five bullets in there. There's three bullets extracted. That's three wounds. There's two through-and-throughs. That's seven, and then there's a grazed wound. That's eight. That's five bullets. It's a five-shot. But the biggest point I want to make about this, why on earth would he want to contradict the kind of gun that was used as a murder weapon? If he shows it's a six-shot gun, then he's just taken what he needs to be the murder weapon, the murder weapon that they got from Antonio Martinez that connected up to the murder, is a five-shot .38 caliber gun. He's just not only uncorroborated his admission, which is what he said, he's also undone his whole case. So the point is, Your Honors, these things he raises, these claims he makes, the introduction, if the autopsy report in this case were error, it certainly, absolutely was not harmless batteries without. And for these reasons, Your Honor, and those in our brief, I would ask this Court to uphold the defendant's conviction and sentence. Thank you. Thank you. Brief response, Mr. O'Toole. Thank you, Your Honors. I'd like to address those last two points. First, the state misunderstands the relevance of the number of bullet wounds, and if you look at my brief, I list the six wounds that are indicated on the autopsy report, the six bullets. But the point is, it's not the type of gun that was used. It was whether or not the defendant's confession was accurate. And if it wasn't accurate, then is it just as unbelievable? And regarding the harmless error analysis, it's actually harmless beyond a reasonable doubt because this is a confrontation issue. The state is actually saying that it's harmless because we know what the ME would have testified to. And as you pointed out, not only can you not say what the ME would have testified to, you can't say what cross-examination would have done to that testimony. So you can't say that it's harmless beyond a reasonable doubt based on complete speculation as to what the ME would have said. Now, the fact that defense counsel made this argument, that there was no evidence of close-range firing, that argument is completely worthless without the ME on the stand able to explain the report, able to explain why the lack of stippling does indicate lack of close-range firing. Otherwise, they just have to take defense counsel's word for it. So none of the state's arguments with regard to the harmlessness of that error hold any weight. Now, going back to the first issue very briefly, the only response the state had as to why counsel's strategy was sound for allowing this stipulation to go forward was because counsel feared that he couldn't get his confession in if he didn't recant. Now, that's the very definition of an unsound strategy. The state's entire premise is based on the fact that Martinez's recantation could have come in anyway, even though they weren't going to call him. And they say it can come in because it was merely impeachment. But as Your Honor pointed out, this was coming in for substantive evidence to explain why Martinez told the informant that he confessed. Now, the state cites Crawford as saying that non-hearsay is not implicated by the Confrontation Clause. The case Crawford cites is Tennessee v. Street. What the state ignores about Tennessee v. Street is the major distinction between impeachment and substantive evidence. Impeachment is limited by the court, by an instruction. This court recently held in People v. Bonds that the danger of allowing impeachment evidence in is that it can be taken substantively as well. And in this case, the state claims it's impeachment, but there's clearly a substantive component, and there was no instruction. So you can't hold that this was impeachment evidence only without a limiting instruction. And I note that every case the site relies upon, the trial court made it very clear to the jury, we're considering this only for impeachment. In this case, this was a testimonial statement used substantively against the defendant without the right to cross-examine it. And very briefly on the distinction between Campbell and Phillips, Phillips did not reverse Campbell. Phillips said that when there's an issue that's tantamount to a guilty plea, the defendant doesn't have to object. There doesn't have to be an objection on the record. It didn't alter the analysis that a waiver of a confrontation right still has to be sound trial strategy. It clarified the holding in a different context, and for that reason it still applies to this case. Thank you very much. Thank both of you. This matter will be taken under advisement.